# In the United States Court of Federal Claims

No. 03-2684L & No. 01-568L (consolidated)

(Filed: April 27, 2007)

**************************************

|  |  |  |
|---|---|---|
| ) | | |

SHELDON PETERS WOLFCHILD, *et al.*,  )

                     Plaintiffs,  )

             v.  )

UNITED STATES,  )

                  Defendant.  )

  )

Indian trust claims based upon
Appropriation Acts for the Department
of the Interior in 1888, 1889, and 1890;
Indian Trust Accounting Statute; motion
to quash summonses; case or controversy;
amendment of complaint and complaints
of intervening plaintiffs; RCFC 15(a);
intervention as plaintiffs; RCFC 24

**************************************

      Erick G. Kaardal, Mohrman & Kaardal, PA, Minneapolis, MN, for *Wolfchild* plaintiffs. With him on the brief was William F. Mohrman, Mohrman & Kaardal, P.A., Minneapolis, MN.

      Lawrence H. Crosby, Crosby & Associates, St. Paul, MN, for *Cermak* plaintiffs.

      Laura Maroldy, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Matthew J. McKeown, Acting Assistant Attorney General, and Tom Zia and Sara Culley, Trial Attorneys, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.  Of counsel were Janet Goodwin and Angela Kelsey, Office of the Solicitor, Department of the Interior, Washington, D.C.

      Eric J. Magnuson, Rider Bennett, LLP, Minneapolis, MN, for intervening plaintiff Lower Sioux Indian Community.

      Jack E. Pierce, Pierce Law Firm, PA, Minneapolis, MN, for the Stephens, R. Cermak, J. Cermak, Henderson, Klingberg, Alkire, Arnold, and Godoy groups of intervening plaintiffs.

      Kelly H. Stricherz, Vermillion, SD, for the Mozak group of intervening plaintiffs.

      Garrett J. Horn, Horn Law Office, Yankton, SD, for the Saul, Trudell, Taylor, Ferris, Henry, and Vassar groups of intervening plaintiffs.

Creighton A. Thurman, Yankton, SD, for the Cournoyer, Robinette, Kimbell, French, and Wanna groups of intervening plaintiffs.

Elizabeth T. Walker, Walker Associates, Alexandria, VA, for the anonymous Walker group of intervening plaintiffs.

Robin L. Zephier, Abourezk & Zephier, PC, Rapid City, SD, for the Zephier group of intervening plaintiffs.

David Garelick, Larry Leventhal & Associates, St. Paul, MN, for the Burley group of intervening plaintiffs.

Wood R. Foster, Jr., Siegel, Brill, Greupner, Duffy & Foster, PA, Minneapolis, MN, for the Lafferty, Blaeser, Whipple, and Lowe groups of intervening plaintiffs.

Sam S. Killinger, Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, LLP, Sioux City, IA, for the Enyard group of intervening plaintiffs and for the Kitto group of applicants for intervention.

Bernard J. Rooney, Amherst, WI, for the Rooney group of intervening plaintiffs.

Scott A. Johnson, Johnson Law Group, Minnetonka, MN, for the Rocque group of intervening plaintiffs and for the Margaret Prescott group of applicants for intervention.

James L. Blair, Renaud, Cook, Drury, Mesaros, PA, Phoenix, AZ, for the anonymous Blair group of intervening plaintiffs.  With him on the briefs was Barry P. Hogan, Renaud, Cook, Drury, Mesaros, PA, Phoenix, AZ.

Gary J. Montana, Montana & Associates, Osseo, WI, for the Julia DuMarce group of intervening plaintiffs.

Nicole N. Emerson, Lynn, Jackson, Shultz & Lebrun, PC, Sioux Falls, SD, for the Garreau group of intervening plaintiffs.

Douglas Kettering, Kettering Law Office, Yankton, SD, for the Ke Zephier group of intervening plaintiffs.

Randy V. Thompson, Nolan, MacGregor, Thompson & Leighton, St. Paul, MN, for the Abrahamson group of intervening plaintiffs.

Frances Felix, *pro se*, Minneapolis, MN, for herself and members of the immediate Felix family as intervening plaintiffs.

Royce Deryl Edwards, Jr., Joplin, MO, for the Vadnais group of applicants for intervention.

Philip W. Morgan, Britton, SD, for the Youngbear and Marvel DuMarce groups of applicants for intervention.

Brian L. Radke, Radke Law Office, P.C., Sioux Falls, SD for the Schroder group of applicants for intervention.

Philip Baker-Shenk, Holland & Knight LLP, Washington, DC, for the Shakopee Mdewakanton Sioux Community and the Prairie Island Indian Community.  With him at the hearing were Brian B. O'Neill and Richard A. Duncan, Faegre & Benson LLP, Minneapolis, MN.  With him on the briefs was Philip R. Mahowald, General Counsel, Prairie Island Indian Community, Welch, MN.  Of counsel was Kurt V. BlueDog, BlueDog, Paulson, & Small, PLLP, Bloomington, MN.


# OPINION AND ORDER

LETTOW, Judge.

_____Over 20,000 individuals claiming descent from persons who were members of the Mdewakanton band of Sioux Indians and who assisted white settlers in Minnesota during the 1862 Sioux uprising (the "loyal Mdewakanton") have brought suit or have sought to join suit against the United States in this Indian trust case.  *See Wolfchild v. United States*, 62 Fed. Cl. 521, 526-29 (2004) ("*Wolfchild I*") (summarizing the history of the 1862 Sioux uprising and the posture of the loyal Mdewakanton).  Prior proceedings in this action addressed the nature and viability of the Indian trust claims brought by the lineal descendants of the loyal Mdewakanton and resolved many of the party-related issues arising in this collective action.  *See Wolfchild I*, 62 Fed. Cl. 521; *Wolfchild v. United States*, 68 Fed. Cl. 779 (2005) ("*Wolfchild II*"); *Wolfchild v. United States*, 72 Fed. Cl. 511 (2006) ("*Wolfchild III*").[1]  Yet a further cluster of party-related disputes has arisen.  Pending before the court are a motion filed by the Shakopee Mdewakanton Sioux Community and the Prairie Island Indian Community ("Objecting Communities" or the "two communities") to quash summonses issued to bring them into the case, as well as a series of motions brought by groups of intervening plaintiffs and applicants for intervention seeking to add or regroup intervening plaintiffs.

In addressing these party-related motions by this decision, the court continues its efforts – originally foreshadowed in *Wolfchild I*, 62 Fed. Cl. at 552-55, and *Wolfchild II*, 68 Fed. Cl. at

---

[1]Jurisdictionally, the *Wolfchild* action has been brought under the Tucker Act, 28 U.S.C. § 1491(a), and the Indian Tucker Act, 28 U.S.C. § 1505.  Each of the plaintiffs and intervening plaintiffs alleges that he or she is a lineal descendant of a loyal Mdewakanton.  The lineal descendants of the loyal Mdewakanton are an "identifiable group of American Indians" within the meaning of the Indian Tucker Act, 28 U.S.C. § 1505, and accordingly this is a collective action under that Act.  *See Wolfchild III,* 72 Fed. Cl. at 517; *Wolfchild I,* 62 Fed. Cl. at 539.

795-801 – to oversee and complete an orderly means for "joinder of additional parties" in this collective action.  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

## BACKGROUND

Initially, over 250 plaintiffs originally filed the *Wolfchild* action in November 2003. Thereafter, this court granted a motion by those plaintiffs for a partial summary judgment that (1) a trust, which included land, improvements to land, and monies as the corpus, was created in connection with, and as a result of, provisions in appropriation acts for the Department of the Interior in 1888, 1889, and 1890 ("Appropriations Acts")[2] that provided money to be expended under specific directions for the benefit of the loyal Mdewakanton and their lineal descendants,[3] (2) such trust was neither extinguished nor terminated by the Act of December 19, 1980, Pub. L. No. 96-557, 94 Stat. 3262 (the "1980 Act"), which converted interests of the United States in the property at issue to a holding in trust for three Indian communities located in Minnesota,[4] and

---

[2]The three Appropriation Acts are the Act of June 29, 1888, ch. 503, 25 Stat. 217, 228-29; the Act of Mar. 2, 1889, ch. 412, 25 Stat. 980, 992-93; and the Act of Aug. 19, 1890, ch. 807, 26 Stat. 336, 349.

[3]As defined in the Appropriation Acts, the initial trust beneficiaries were "Indians in Minnesota, belonging to the Medawakanton [sic] band of Sioux Indians, who have resided in said State since [May 20, 1886] . . . and severed their tribal relations."  Act of June 29, 1888, 25 Stat. at 228; *accord* Act of Mar. 2, 1889, 25 Stat. at 992; Act of Aug. 19, 1890, 26 Stat. at 349. These Indians had been loyal to the United States during the Sioux uprising, which began in Minnesota in August 1862 and claimed the lives of more than 500 white settlers and numerous Indians.  *See Wolfchild I*, 62 Fed. Cl. at 526.  By aiding the whites, many of the loyal Indians lost their homes and property, and Congress concluded that their lives would be in danger were they to return to their tribes.  *Id.* (quoting *Cong. Globe*, 38th Cong., 1st Sess. 3516 (1864)).

   The explicit statutory definitional reference to Indians "who have resided in said State since . . . [May 20, 1886]," was to a census prepared by U.S. Special Agent Walter McLeod, who determined on behalf of the Commissioner of Indian Affairs which Mdewakanton Indians (1) were loyal to the United States during the 1862 uprising, (2) had renounced their tribal relations, and (3) had remained in Minnesota.  *See Wolfchild I*, 62 Fed. Cl. at 528.  Under the 1889 and 1890 Appropriations Acts, the beneficiaries included both the loyal Mdewakanton and their families.  Act of Mar. 2, 1889, 25 Stat. at 992 (monies to be appropriated for "these Indians or family thereof"); Act of Aug. 19, 1890, 26 Stat. at 349 (monies to be appropriated for "these Indians or families thereof").

[4]The three Indian communities are the Lower Sioux Indian Community, the Shakopee Mdewakanton Sioux (Dakota) Community, and the Prairie Island Indian Community in Minnesota.  94 Stat. at 3262.

(3) the United States breached the trust engendered by the Appropriation Acts through the passage of the 1980 Act and other actions taken thereafter. *See Wolfchild I*, 62 Fed. Cl. at 555.[5]

   In *Wolfchild II*, the court denied the government's motion for reconsideration of the ruling that a trust had been created for the loyal Mdewakanton in connection with and as a consequence of the Appropriations Acts. *Wolfchild II*, 68 Fed. Cl. at 785-87, 801. In addition, to serve "[t]he interest of [trial] courts in managing collective actions in an orderly fashion," *Hoffman-La Roche*, 493 U.S. at 173, the court granted plaintiffs' request for authorization to publish a notice informing prospective plaintiffs of the pendency of this action. *Wolfchild II*, 68 Fed. Cl. at 785-87, 801. In granting plaintiffs' request, the court required plaintiffs to send personal notice to all lineal descendants of the loyal Mdewakanton whose names and addresses were known and who had not already joined in the action, and to publish notice in newspapers and periodicals that had wide circulation in Minnesota or among Native Americans. *Id.* at 801, 804-05; *Wolfchild III*, 72 Fed. Cl. at 516. Pursuant to the "Call Statute," 28 U.S.C. § 2507, the court also required the government to provide a listing of those lineal descendants known to the government. *Wolfchild II*, 68 Fed. Cl. at 797-98.

   In *Wolfchild III*, the court disposed of a number of party-related issues, granting plaintiffs' motion to file a Third Amended Complaint to add thousands of additional plaintiffs and granting the motions of thousands of others to intervene as plaintiffs. *Wolfchild III*, 72 Fed. Cl. at 514, 539-40. The court also granted a motion by the Lower Sioux Indian Community ("Lower Sioux") for leave to intervene as a plaintiff. *Id.* at 514, 540.[6]

--------

   [5]The court determined that plaintiffs' contractual claims had not survived because of the six-year statute of limitations applicable to claims brought under the Tucker Act, but that their trust claims had been preserved by the Indian Trust Accounting Statute. *Wolfchild I,* 62 Fed. Cl. at 547-49; *see* Department of the Interior and Related Agencies Appropriations Act, 2004, Pub. L. No. 108-108, 117 Stat. 1241, 1263 (2003). The Indian Trust Accounting Statute, with minor variations, has been enacted for fiscal years 1991 to 2006 as part of the annual appropriations statute for the Department of the Interior. It provides that the statute of limitations for claims alleging mismanagement or loss of Indian trust funds shall not begin to run until the beneficiaries have been given an accounting. *See* 117 Stat. at 1263 (fiscal year 2004 version); *accord* Department of the Interior, Environment, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109-54, 119 Stat 499, 519 (2005) (fiscal year 2006 version); *see also Shoshone Indian Tribe of Wind River Reservation v. United States,* 364 F.3d 1339, 1347 (Fed. Cir. 2004); *Wolfchild I*, 62 Fed. Cl. at 534-535 & n.10.

   [6]In addition, the court addressed the related case of *Cermak v. United States*, No. 01-568L. In that case, the government's motion for entry of final judgment insofar as the Cermaks' takings and breach-of-duty claims were concerned was granted in part. *Wolfchild III*, 72 Fed. Cl. at 540. The court denied in part the government's motion by (1) vacating a 2002 order by the judge previously assigned to the *Cermak* case – insofar as that order dismissed the Cermaks' trust-mismanagement claim – and (2) reinstating the trust-mismanagement claim. *Id.*

Finally, in *Wolfchild III*, the court also considered plaintiffs' motion pursuant to 41 U.S.C. § 114(b), requesting that the court issue summonses to the Lower Sioux, Shakopee Mdewakanton Sioux, and Prairie Island Indian Communities (the "three communities"). *Wolfchild III*, 72 Fed. Cl. at 532.  After finding that plaintiffs' request was moot as to the Lower Sioux, who independently had moved to intervene as a plaintiff, the court rejected the government's threshold argument that only the government was authorized to move for a summons of a third party under 41 U.S.C. § 114(b).  *Id.* at 533, 535.  The court also concluded that the two Objecting Communities' sovereign immunity would not immunize them from such summonses because the Department of the Interior had administratively vested them with the role of the administrators of the trust property and that action made them agents of the United States, as to which sovereign immunity had been abrogated by statute.  *Id.* at 537-539. Accordingly, with no statutory or federal common law bar to issuing the summonses, the court granted plaintiffs' motion to issue the summonses to the Objecting Communities.  *See id.* at 535-36, 539.

## ANALYSIS

### A. *The Objecting Communities' Motion to Quash*

The Objecting Communities move to quash the summonses on several grounds: (1) that under the case-or-controversy requirement of Article III of the Constitution, the summonses are improper because the court may not enter any judgment that operates directly against them, (2) that the communities possess tribal sovereign immunity, which they have not waived, and (3) that the court exceeded its authority under 41 U.S.C. § 114(b) by causing the summonses to be issued.  Mot. to Quash Summonses Issued to the Shakopee Mdewakanton Sioux Community and Prairie Island Indian Community and to Dismiss Any Claims Against Them ("Mot. to Quash") at 1.  In support of the Objecting Communities' motion, the government contends – in an argument previously rejected in *Wolfchild III*, 72 Fed. Cl. at 539 – that the sovereign immunity enjoyed by the communities remains intact because they are not acting as agents of the United States in administering the trust property at issue.  Def.'s Resp. in Support of the Mot. to Quash Summonses and to Dismiss ("Def.'s Resp.") at 2, 5.[7]

Plaintiffs counter that (1) the Objecting Communities' tribal sovereign immunity is not implicated by the summonses issued under 41 U.S.C. § 114(b), (2) the communities' actions are not shielded by their sovereign immunity, given that they are acting as agents of the United States, (3) the communities' sovereign immunity is barred because the communities have

---

The court then consolidated *Cermak*, No. 01-568L, with *Wolfchild v. United States*, No. 03-2684L, with respect to the Cermaks' reinstated claim.  *Id.*

[7]The Zephier group of intervening plaintiffs filed a motion in support of the Objecting Communities' motion to quash, arguing that the communities are protected by tribal sovereign immunity and that the summonses "appear to have accomplished their goal of serving formal notice upon [the Objecting Communities] to join said litigation if desired."  Zephier Group's Mot. to Join the Mot. to Quash and to Dismiss at 1-2.

usurped the rights of the descendants of the loyal Mdewakanton to the trust corpus, (4) the communities had already waived sovereign immunity by participating in the case as *amici curiae*, and (5) summoning the two communities was consistent with due process and would not prejudice the communities.  Pls.' Mem. in Opposition to the Mot. to Quash Summonses ("Pls.' Resp.") at 1, 18-19, 25-26, 37-38, 40.[8]

The subject matter jurisdiction of this court is limited by the case-or-controversy standard set out in Article III of the Constitution.  *See* U.S. Const. art. III, § 2; *see also* 28 U.S.C. §§ 1346(a), 1491, 1505; *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III.").[9]  This court's primary role in the federal judicial system is to address claims for money damages against the United

─────────────────────

[8]The Lower Sioux filed a response to the Objecting Communities' motion to quash, asserting that the court's issuance of the summonses does not implicate the Objecting Communities' tribal sovereign immunity.  Lower Sioux's Mem. in Resp. to Mot. to Quash and to Dismiss ("Lower Sioux Resp.") at 2, 5.

The anonymous Blair group of intervening plaintiffs also filed a motion joining plaintiffs' and the Lower Sioux's responses to the extent that they argue that the Objecting Communities "were acting as . . . agent[s] of the United States Government."  Anonymous Blair Group's Joinder in Pls.' Opposition to the Mot. to Quash and to Dismiss at 1-2.

[9]Although the Court of Claims was created in 1855 under Article I of the Constitution, *see* Act of February 24, 1855, ch. 122, 10 Stat. 612, and this court is its successor, *see* 28 U.S.C. § 171(a), the court has traditionally applied the limitation set out in Article III, Section 2 restricting the subject matter jurisdiction of federal courts to adjudication of "cases" and "controversies."  U.S. Const. art. III, § 2; *see Allen v. Wright*, 468 U.S. 737, 750 (1984); *Anderson*, 344 F.3d at 1350 n.1 (applying the case-or-controversy requirement of Article III to a Court of Federal Claims case); *Glass v. United States*, 258 F.3d 1349, 1355 (Fed. Cir. 2001) (same); *see also Ryan v. United States*, 71 Fed. Cl. 740, 742 (Fed. Cl. 2006) (explaining that the court applies the case-or-controversy requirement of Article III, absent a directive from Congress to the contrary); *Massachusetts Bay Transp. Auth. v. United States*, 21 Cl. Ct. 252, 257-258 (1990) (Rader, J.) ("Although established under Article I, the Claims Court traditionally has applied the case or controversy requirement unless jurisdiction conferred by Congress demands otherwise.").

Section 2519 of Title 28 also indicates that applying the case-or-controversy requirement in this court is required.  *See* 28 U.S.C. § 2519 ("A final judgment of the United States Court of Federal Claims against any plaintiff shall forever bar any further claim, suit, or demand against the United States arising out of the matters involved in the *case or controversy*.") (emphasis added); *see also CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 558 (2000) ("[28 U.S.C. § 2519] appears to contemplate that the court's power to enter final judgments is predicated on 'case or controversy' limitations.").

States.  *See* 28 U.S.C. § 1491(a)(1) (Tucker Act); 28 U.S.C. § 1505 (Indian Tucker Act).[10]  This court may issue equitable relief against the United States in limited circumstances.  *See, e.g.*, 28 U.S.C. §§ 1491(a)(2) (restoration to office or position, or correction of applicable records), 1491(b)(2) (declaratory and injunctive relief in bid protest cases), 1494 (determination of accounts), 1496 (relief of a disbursing officer from responsibility for loss), 1507 (declaratory judgments under 26 U.S.C. § 7428), 1508 (judgments in partnership tax proceedings under 26 U.S.C. §§ 6226, 6228(a)).  The only area in which the case-or-controversy requirement does not apply concerns congressional reference cases heard under 28 U.S.C. § 1492, and in modern times those cases are relatively rare.[11]

As to Article III's case-or-controversy mandate, the Supreme Court has said: "'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)).  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."  *DaimlerChrysler Corp. v. Cuno*, __ U.S. __, __, 126 S.Ct. 1854, 1860-61 (2006); *see also Massachusetts v. Environmental Prot. Agency*, __ U.S. __, __, 127 S. Ct. 1438, 1452 (2007) (the case-or-controversy requirement of Article III "confine[s] 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'") (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).  In short, the case-or-controversy requirement of Article III reflects the broad principle that federal courts must "respect[] 'the proper – and properly limited – role of the courts in a democratic society.'"  *Cuno*, 126 S.Ct. at 1860 (quoting *Allen*, 468 U.S.

---

[10]Under the Tucker Act, this court possesses jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Indian Tucker Act confers jurisdiction on this court for:

> any claim against the United States . . . in favor of any tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group.

28 U.S.C. § 1505.  Both acts provide a jurisdictional predicate for suits in this court and must be accompanied by a corresponding substantive claim "enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398 (1976) (referring to Tucker Act claims); *accord United States v. White Mountain Apache Tribe,* 537 U.S. 465, 473 (2003) (referring to Indian Tucker Act claims); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Tucker Act claims).

[11]In recent years, only two congressional reference cases have been pending before the court, Nos. 93-648X (*Land Grantors*), and 02-746X (*Davis*).

at 750, in turn quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *see also Allen*, 468 U.S. at 750 ("The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government."); *Reid v. Department of Commerce,* 793 F.2d 277, 278 (Fed. Cir. 1986) ("Article III of the Constitution restricts the exercise of federal judicial power to actual 'cases' and 'controversies.'").

Integral to these Article III limitations is the doctrine of standing, which requires that the litigant have suffered an injury in fact that is concrete and particular, actual or imminent, fairly traceable to the defendant's action, and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Warth*, 422 U.S. at 498 ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). In this way, the doctrine of standing "enforces the Constitution's case-or-controversy requirement." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

Although the doctrine of standing typically focuses on the plaintiff, *see, e.g., Newdow*, 542 U.S. at 12; *Lujan*, 504 U.S. at 560-61; *Warth*, 422 U.S. at 498, courts have also applied the case-or-controversy requirement to parties other than plaintiffs. *See Diamond v. Charles*, 476 U.S. 54, 68-69 (1986) (applying standing requirements of Article III to an intervenor-defendant appealing a judgment against a co-defendant who chose not to appeal); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233-34 (D.C. Cir. 2003) (applying standing requirements of Article III to defendant-intervenor); *Fund For Animals, Inc. v. Norton,* 322 F.3d 728, 731-33 (D.C. Cir. 2003) (same); *Solid Waste Agency of No. Cook County v. United States Army Corps of Eng'rs,* 101 F.3d 503, 504, 507 (7th Cir. 1996) (same); *see also Penda Corp. v. United States*, 44 F.3d 967, 969-71 (Fed. Cir. 1994) (acknowledging, in a case involving an intervenor-defendant appealing a judgment against a co-defendant who chose not to appeal, that the Federal Circuit's "statutory jurisdiction is constitutionally circumscribed").[12]

In this case, plaintiffs cannot assert any claims against the Objecting Communities because they would not be "claim[s] against the United States." *See* 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1505; *Testan,* 424 U.S. at 398 (litigant must have claim "enforceable *against the United*

---

[12]As noted in *Wolfchild III,* 72 Fed. Cl. at 530 n.25, no reported decision of the Federal Circuit appears directly to address the somewhat analogous question of whether an intervenor must satisfy the requirements of Fed. R. Civ. P. 24(a) *and* Article III, and the circuit courts are split on that question. *See San Juan County, Utah v. United States*, 420 F.3d 1197, 1204-05 (10th Cir. 2005) (noting the circuit split); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 & n.5 (1st Cir. 2003) (same); *see also* 7C Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1908 at 28 (Supp. 2006) ("[S]ome courts have ruled that, in addition to satisfying the requirements of Rule 24(a), the intervenor must have Article III standing. Other courts have held that standing is not required.") (footnotes omitted). Moreover, the Supreme Court has specifically refrained from deciding the question. *Diamond*, 476 U.S. at 68-69; *accord McConnell v. Federal Election Comm'n*, 540 U.S. 93, 233 (2003) (citing cases, including *Diamond*, in declining to "address the standing of the intervenor-defendants"). This precise issue, however, is not before the court.

*States*") (emphasis added); *White Mountain Apache Tribe,* 537 U.S. at 473 (same); *LeBlanc*, 50 F.3d at 1028 (same); *see also* Rule 4 of the Rules of the Court of Federal Claims ("RCFC"), Rules Committee Note (2002) ("only the United States is properly the named defendant"); RCFC 10(a) (in the complaint, the United States shall be "designated as the party defendant").  As this court observed in *Wolfchild III*, "[t]his court cannot issue a judgment that calls upon the Communities to pay monetary damages," and "plaintiffs . . . may pursue monetary damages only against the government, and, if any judgment for damages ensues, it would be left to the discretion of the government to determine whether to seek indemnification from the Communities."  *Wolfchild III*, 72 Fed. Cl. 535.

Currently, the government raises no claims against the Objecting Communities, Def.'s Resp. at 1, even though it could pursue claims against them.  *See* 41 U.S.C. § 114(b); *Penda*, 44 F.3d at 970 n.4.

The redressability criterion for standing under Article III is thus squarely at issue.  As the Supreme Court explained, Article III requires that an actual dispute exist between the parties respecting which the court can provide relief:

> A 'controversy' in this sense must be one that is appropriate for judicial determination.  A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.  The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.*

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240-41 (1937) (emphasis added) (citations omitted); *Landmark Land Co., Inc. v. Federal Deposit Ins. Corp.*, 256 F.3d 1365, 1380 (Fed. Cir. 2001) (quoting *Haworth,* 300 U.S. at 240-41); *Glass*, 258 F.3d at 1355 (same).  *See also Allen*, 468 U.S. at 751 (focusing on whether the claim a litigant has made is "likely to be redressed by the requested relief."); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, __ F.3d __, __, 2007 WL 942201, *3 (Fed. Cir. Mar. 30, 2007) (quoting *Allen*, 468 U.S. at 751).

Respecting redressability, the Federal Circuit's recent analysis of the necessary-party rule in *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318 (Fed. Cir. 2007) is instructive.  That case involved the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act, Pub. L. No. 107-331, §§ 601-609, 116 Stat. 2845 (2002) (codified at 25 U.S.C. §§ 1779-1779g) ("Settlement Act"), under which the United States paid $40 million in compensation to three Indian tribes – the Cherokee, Choctaw, and Chickasaw Nations ("settling tribes") – to resolve claims that the United States had mismanaged certain lands it held in trust for the settling tribes.  *United Keetoowah Band*, 480 F.3d at __, 2007 WL 803499, at *1-2. Following passage of the Settlement Act and pursuant to a provision in the Act, the United Keetoowah Band, descendants of the Cherokee, sued the United States for damages, alleging that the Act had extinguished (1) the Band's claims to any right, title, and interest in certain lands the

United States held in trust for the settling tribes and (2) the Band's claim that the United States had breached its fiduciary duties by mismanaging those lands.  480 F.3d at __, 2007 WL 803499, at *4-5.[13]  After the Cherokee Nation intervened to file a motion to dismiss under RCFC 19, the trial court granted that motion, reasoning that the Cherokee Nation was a necessary and indispensable party under RCFC 19 because it had claimed an "interest in the subject of the litigation."  *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 67 Fed.Cl. 695, 700-01 (2005), *rev'd and remanded*, 480 F.3d 1318 (Fed. Cir. 2007).  Given the Cherokee Nation's tribal sovereign immunity, the trial court concluded that it could not consider the United Keetoowah Band's claims.  67 Fed. Cl. at 704.

In analyzing RCFC 19 on appeal, the Federal Circuit concluded that the trial court had erred by focusing on the Cherokee Nation's claim to be the exclusive titleholder of certain lands at issue in the case and by treating "the pending litigation []as really a dispute over competing claims to the same property."  *United Keetoowah Band*, 480 F.3d at __, 2007 WL 803499, at *7. The actual subject matter of the United Keetoowah Band's claim, the court of appeals explained, was "the statutory extinguishment" of the Band's claims and the related damages it was seeking from the government.  480 F.3d at __, 2007 WL 803499, at *8.  The exclusive remedy available to the Band under the Settlement Act was money damages, and the Cherokee Nation's interest in retaining its alleged exclusive rights to certain lands was merely "indirect" and "contingent."  *Id.* (citing *American Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989)); *but cf. Shell Dev. Co. v. Universal Oil Prods. Co.*, 157 F.2d 421, 424 (3d Cir. 1946) (finding a necessary party where the party has "an interest in the controversy . . . of such a nature that a final decree cannot be made without . . . affecting that interest").

In a similar vein, plaintiffs' claims in this case center on the 1888, 1889, and 1890 Appropriations Acts, and then on the effect of a federal statute and the implementation of that statute on their beneficial interests in a trust, and they seek monetary compensation from the government.  *See* Rev. Third Am. Compl. at 248-50, 253; *Wolfchild I*, 62 Fed. Cl. at 555.  Like the Cherokee Nation, the Objecting Communities have only an "indirect" and "contingent" connection to the subject matter of this case – the beneficial interest of the loyal Mdewakanton in the trust engendered by the Appropriation Acts.[14]  The Objecting Communities *might* play a role

---

[13]The Settlement Act permitted Indian tribes, other than the settling tribes, to sue the United States for extinguishment of any "title, interest, or entitlement" effected by the Settlement Act, provided the suit was filed in this court within 180 days of the Act's enactment. § 608(b)(1), 116 Stat. at 2853.

[14]Although the Communities now administer the corpus of the trust that was created by the 1888, 1889, and 1890 Appropriations Acts, *see Wolfchild III*, 72 Fed. Cl. at 514-15; *Wolfchild I*, 62 Fed. Cl. at 555, that does not mean that the Communities hold title to, or a beneficial interest in, the "1886 lands" that are the primary corpus of the trust.  In their briefs supporting the motion to quash, the Objecting Communities imply that they own the 1886 lands, pointing to the second sentence of Section 2 of the 1980 Act.  *See* Mot. to Quash at 27 (referring to Pub. L. No. 96-557, § 2, 94 Stat. at 3262: "The lands so transferred [held by the United States in trust] are hereby declared to be a part of the reservations of the respective Indian communities

11

in any future accounting, they *might* seek indemnification from the government, and they *might* be subject to a claim by the government for indemnification. *See Wolfchild III*, 72 Fed. Cl. at 535. But at present no dispute – no case or controversy – between the Objecting Communities and any other party presents itself because the government has not made any claim against the Objecting Communities. *See Cuno*, 126 S.Ct. at 1860; *Allen*, 468 U.S. at 750; Rev. Third Am. Compl. ¶¶ 28-39; Def.'s Resp. at 1. With no case or controversy to adjudicate against the Objecting Communities, this court grants the Objecting Communities' motion to quash. *See Cuno*, 126 S.Ct. at 1860; *Allen*, 468 U.S. at 750.[15]

**B.  *Motions to Intervene as Plaintiffs or to Amend Complaints in Intervention***

Although the twice-extended deadline for intervening as a plaintiff in the *Wolfchild* action expired July 12, 2006, see *Wolfchild III*, 72 Fed. Cl. at 517, a number of motions have since been filed that seek intervention of new groups as plaintiffs or additions to existing groups of intervening plaintiffs. The mechanism for joinder through a collective-action statute, such as the Fair Labor Standards Act or the Indian Tucker Act, has been described as "a form of [what] is, in essence, a special specie of permissive joinder." *Gallender v. Empire Fire & Marine Ins. Co.*, 2007 WL 325792, at *2 (S.D. Miss. Jan. 31, 2007) (citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969), and *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)). A trial court

---

for which they are held in trust by the United States."). However, inclusion of the 1886 lands within the reservation of the Communities gives the Communities political control of the lands insofar as their sovereignty extends, but it does not shift ownership. *See Montana v. United States*, 450 U.S. 544, 559 (1981) (even if a treaty gave the Crow Tribe certain regulatory powers, "that power cannot apply to lands held in fee by non-Indians"); *cf. South Dakota v. Bourland*, 508 U.S. 679, 689 (1993) ("when an Indian tribe conveys ownership of its tribal lands to non-Indians, it loses any former right of absolute and exclusive use and occupation of the conveyed lands"); *Brendale v. Confederated Tribes & Bands of Yakima Indian Nation*, 492 U.S. 408, 422-23 (1989) (plurality, White, J.) (by permitting conveyance of Indian lands to non-Indians, the allotment acts deprived the Yakima Nation of the "'exclusive use and benefit' of all the land within the reservation boundaries").

As to ownership, the Objecting Communities contend that '[p]ursuant to the 1980 Act, the Department [of the Interior] transferred beneficial interest in the now-trust lands to the Tribes." Mot. to Quash at 14. The court presumably will have to address that contention, if it is pursued by the government, but any decision in that regard would be merely a predicate rendered in addressing issues of monetary relief against the United States. *See United Keetoowah Band*, 480 F.3d at __, 2007 WL 803499, at *8.

[15]The position of the Objecting Communities in this litigation is fully comparable to that of the Lower Sioux, and the Lower Sioux have been granted leave to intervene as a plaintiff. Because all three communities are acting as agents of the United States in administering the trust property, *Wolfchild III*, 72 Fed. Cl. at 530, the interest of the Lower Sioux, albeit indirect and contingent, supports intervention under RCFC 24.

managing a collective action may "limit[] time for . . . joinder of additional parties." *Hoffman-La Roche*, 493 U.S. at 173.[16]

Procedurally, a plaintiff seeking to bring in additional parties after filing the initial complaint may do so only by amending the complaint. 4 *Moore's Fed. Practice* ("*Moore's*") § 20.02[2][a] at 20-13; *see System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 171 (2005) (permitting joinder of an additional plaintiff through amendment of complaint); 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, ("*Federal Practice & Procedure*") § 1474 at 549-552 (2d ed. 1990) ("[A] party may make a Rule 15(a) amendment to add, substitute, or drop parties to the action." (footnotes omitted)). Because the United States has filed an answer in this case, plaintiffs and intervening plaintiffs may amend their complaints "only by leave of court or by written consent of the adverse party." RCFC 15(a). Thus, "the plaintiff must make a motion to amend to effect[uate] joinder" of additional plaintiffs. 4 *Moore's* § 20.02[2][a] at 20-13.

To this end, the original plaintiffs and several groups of intervening plaintiffs in *Wolfchild* have filed motions requesting leave to amend their current complaints, which motions largely seek to add and remove parties as plaintiffs.[17]  This court's Rules instruct that "leave [to amend] shall be freely given when justice so requires." RCFC 15(a).  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.– the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also System Fuels, Inc. v. United States*, 73 Fed. Cl. 206, 210-211 (2006) (applying RCFC 15(a)).

"[I]n deciding whether to permit . . . an amendment, [a] trial court [i]s required to take into account any prejudice that [the adverse party] would have suffered as a result." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971).  In this regard, relevant considerations are "the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." 6 *Federal Practice & Procedure* § 1487 at 621-23 (footnote omitted); *see also Rockwell Automation, Inc. v. United States*, 70 Fed. Cl. 114, 122 (2006).  Unjustified delay is a factor insofar as it causes or

---

[16]A provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b), provides for joinder of affected employees in a collective action to seek relief under that Act.  That collective-joinder provision has been incorporated in the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, by 29 U.S.C. § 626(b).  The *Hoffman-La Roche* decision arose under this statutory regime.

[17]The groups of intervening plaintiffs, granted intervention by the court's decision rendered August 22, 2006, are "parties to this case for all purposes and entitled to participate fully in all future proceedings." *Wolfchild III*, 72 Fed. Cl. at 521.

exacerbates prejudice.  6 *Federal Practice & Procedure* § 1488 at 659-662 (Although "[i]n most cases, delay alone is not a sufficient reason for denying leave[,] . . . an amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result of the delay, the proposed amendment, if permitted, would have the effect of prejudicing another party to the action." (footnotes omitted)).  "As a general rule, the risk of substantial prejudice increases with the passage of time."  *Id*. § 1488 at 670 (citing *Nilsen v. City of Moss Point*, 621 F.2d 117 (5th Cir. 1980); *Woodson v. Fulton*, 614 F.2d 940 (4th Cir. 1980); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2d Cir. 1968)); *Rockwell Automation*, 70 Fed. Cl. at 122-24.  The detriment to the opposing party may take the form of "the added burden of further discovery, preparation, and expense, thereby prejudicing his right to a speedy and inexpensive trial on the merits."  6 *Federal Practice & Procedure*, § 1488 at 674 (citing *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217 (7th Cir. 1988); *National Indep. Theatre Exhibitors, Inc., v. Charter Fin. Group, Inc.*, 747 F.2d 1396 (11th Cir. 1984)).  Accordingly, "joinder that might have been proper in the original complaint may be denied if the plaintiff has delayed excessively in seeking the new joinder or if the change in structure [of the suit] would prejudice the interests of a litigant."  4 *Moore's* § 20.02[2][a] at 20-14 to 20-15.

Correlatively, the newly formed groups which seek belated intervention as plaintiffs must satisfy similar criteria.  Strictly speaking, "[a] nonparty cannot [directly] invoke the permissive party joinder rule.  Instead, in appropriate circumstances, a nonparty may seek to intervene." 4 *Moore's* § 20.02[2][c] at 20-18 to 20-19 (citing *Thompson v. Boggs*, 33 F.3d 847, 858 n.10 (7th Cir. 1994)); *cf.* RCFC 14(b)(1) (notice to allegedly interested person "of the opportunity to seek intervention").  RCFC 24 governs intervention.[18]  When ruling upon a motion to intervene as of right, "the court considers (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties."  *Wolfchild III*, 72 Fed. Cl. at 520 (citing RCFC 24(a); *American Maritime Transp.*, 870 F.2d at 1560; *Honeywell Int'l, Inc. v. United States*, 71 Fed. Cl.

---

[18]RCFC 24 in pertinent part, provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common.  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

759, 761-62 (2006); *Klamath Irrigation Dist. v. United States*, 64 Fed. Cl. 328, 330-33 (2005)). Similarly, a timely application for "[p]ermissive intervention is allowed at the court's discretion if the applicant's claim or defense and the main action have a question of law or fact in common." *Karuk Tribe of Cal. v. United States*, 27 Fed. Cl. 429, 432 (1993) (applying RCFC 24(b)(2) to deny a motion to intervene when "the applicant-intervenors d[id] not have a claim or defense against the United States"). Previously, the court held that it would be proper to grant *timely* applications for intervention as of right or for permissive intervention made by persons claiming to be descendants of loyal Mdewakanton. *Wolfchild III*, 72 Fed. Cl. at 520 & n.12. The questions respecting intervention thus also become ones of timeliness and prejudice to the existing parties.

"In evaluating timeliness, the court examines three factors: (1) the length of delay in making the application for intervention; (2) the prejudice to the existing parties from intervention versus the prejudice to the would-be intervenor if intervention is denied; and (3) any other unusual circumstances militating in favor or against intervention." *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 463, 466 (1996) (citing *Belton Indus., Inc. v. United States*, 6 F.3d 756, 762 (Fed. Cir. 1993); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783-87 (1st Cir. 1988)); *see also* 6 *Moore's* § 24.21[3] at 24-76 to 24-77. Thus, as with a motion to amend a complaint seeking to join additional plaintiffs, the court must guard against potential prejudice that may ensue from its disposition of motions to intervene. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

The government generally opposes allowing additional individuals to join in this action, asserting that "prejudice will result to it from the addition of more individuals to the lawsuit." Def.'s Opp. to Marvel DuMarce Mot. to Intervene at 2 (Nov. 8, 2006). The government argues that "[t]he continual addition of parties to this case is disruptive and prejudices the parties' rights and interests in resolving the litigation in a timely fashion." Def.'s Resp. to Taylor Group's Mot. to Amend Compl. at 9 (Apr. 16, 2007). The government comments that this action has already accreted so many thousands of individual parties that it has become difficult to manage. As the government avers, "simply keeping track of the name and affiliations of the persons named as plaintiff-intervenors, and their varying allegations and disposition of their motions to the [c]ourt, is burdensome and logistically difficult." Def.'s Opp. to Marvel DuMarce Mot. to Intervene at 2; *see also* Def.'s Opp. to Julia DuMarce Mot. to Amend First Am. Compl. at 3 (Oct. 23, 2006); Def.'s Opp. to Julia DuMarce Mot. to Amend Second Am. Compl. at 6 (Feb. 2, 2007). Additionally, the government points to "substantial inconsistencies" in the some of the requests to add parties, which inconsistencies, the government avers, "make it impossible to determine exactly who the parties are or how many potential intervenors there are." Def.'s Resp. to Taylor Group's Mot. to Amend Compl. at 5.

The government states that it and the other parties to this action are "entitled to certainty and closure respecting the number and identities of the persons" participating in this suit. Def.'s Opp. to Julia DuMarce Mot. to Revise Third Am. Compl. at 8 (Mar. 26, 2007). The government describes as inadequate the explanations proffered by putative intervenors as to why they did not learn of the lawsuit in time to comply with this court's previously imposed deadlines, notwithstanding widespread publication of notice. *See, e.g.*, Def.'s Combined Resp. in Opp. to Shroder Mot. to Intervene and Mot. for Ext. of Deadline to Intervene at 1 (Oct. 30, 2006). The

government contends that "[t]he inability [of putative intervenors] to retain counsel and experts before expiration of the prescribed time period constitutes no legal justification for . . . delay." Def.'s Opp. to Vadnais Mot. to Intervene at 3 (Feb. 2, 2007) (citing *Deukmejian v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1318 (D.C. Cir. 1984)). In the government's view, enforcement of the established cutoff deadline is necessary for the action to proceed in an orderly fashion. Def.'s Opp. to Julia DuMarce Mot. to Revise Third Am. Compl. at 1.

The original plaintiffs take a somewhat more forgiving stance respecting amendments and interventions to add plaintiffs, commenting that this case has not yet progressed to the point where permitting the participation of additional parties would yield prejudice to the parties. Plaintiffs themselves have moved to file a Fourth Amended Complaint. *See* Pls.' Mot. to Amend Third Am. Compl. to Add and Remove Certain Named Pls. at 4 (Jan. 19, 2007).

"Intervention is a useful tool, but [one] which must be used carefully[,] . . . lest the manageable lawsuit become an unmanageable cowlick." *Wilderness Soc'y v. Morton*, 463 F.2d 1261, 1263 (D.C. Cir. 1972) (Tamm, J. (concurring)); *see also Hoffman-La Roche*, 493 U.S. at 170-71 ("[T]he court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."). The court has an obligation to the parties to bring the pending claims to a timely resolution. *See* RCFC 1 ("These rules . . . shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). This action threatens to become so cumbersome and laden with claimants that bringing it to a final conclusion within any reasonable time is put in jeopardy. The court's ability to impose conditions on the addition of parties is relevant to the court's weighing of interests and potential prejudice.

Applying these principles, plaintiffs' and certain intervening plaintiffs' motions to amend complaints are granted,[19] as are the motions for intervention as plaintiffs of the following newly formed groups of applicants for intervention as plaintiffs: Youngbear [293, 294], Schroder [309], Marvel DuMarce [327], Vadnais [400], and Kitto [413]. As a result, 7,588 individuals now appear as plaintiffs in *Wolfchild*, and approximately 13,286 individuals appear as intervening plaintiffs, separated into 40 different groups, as follows:

---

[19]Plaintiffs' motion to file a Fourth Amended Complaint [406] is granted, as are the motions by the Rooney group to file a First Amended Complaint in Intervention [299], the Julia DuMarce group to file a Third Amended Complaint in Intervention [304, 397, 435, 438, and 441], the Anonymous Blair group to file a First Amended Complaint in Intervention [381], the Mozak group to file a Third Amended Complaint in Intervention [426], the Saul group to file a First Amended Complaint in Intervention [436], the Taylor group to file a First Amended Complaint in Intervention [448], and the Vassar group to file a First Amended Complaint in Intervention [451].

| Group Name | Number of Plaintiffs | Filing Date | Basis for Descendancy | |
|---|---|---|---|---|
| | | | 1886 & 1889 Censuses | Other Source |
| Mozak | 856 | 6/21/2006 (amended on 7/13/06 and 7/17/06); 2/23/2007 (mot. to add 52 plaintiffs and remove 4 plaintiffs) | X | |
| Rooney | 37 | 6/27/2006; 9/22/2006 (mot. to amend) | X | |
| Anonymous Walker | 37 | 6/25/2006 (amended 7/10/2006) | X | |
| Rocque[20] | 151 | 6/29/2006 (amended 7/13/06) | X | |
| Blaeser | 6 | 7/17/2006 | X | |
| Lowe | 238 | 7/17/2006 | X | |
| Whipple | 107 | 7/17/2006 | X | |
| Lafferty | 547 | 7/17/2006 | X | |
| Ke Zephier | 0[21] | 7/17/2006; 8/25/2006 (mot. to withdraw) | X | |
| Garreau (Hall) | 137 | 7/13/2006 | X | |
| Trudell | 432 | 7/13/2006 | X | |
| Saul | 64 | 6/23/2006; 3/8/2007 (mot. to remove anonymous plaintiffs) | X | |
| Ferris | 274 | 7/13/2006 | X | |

---

[20]The Rocque group comprises persons asserting descendancy from Madeline Rocque, John Taylor, or Margaret Prescott.

[21]The Ke Zephier group of intervening plaintiffs has sought to withdraw as intervening plaintiffs and instead to be joined with the original plaintiffs. *See* Notice of Filing of Revised Third Am. Compl. and Notice of Withdrawal by Kettering Law Office of Mot. to Intervene. (Aug. 25, 2006).  That motion is granted.

| Taylor | 53 | 7/13/2006; 3/30/2007 (mot. to amend) | X | |
| Henry | 505 | 7/13/2006 | X | |
| Vassar | 158 | 7/17/2006; 4/18/2007 (mot. to remove 84 plaintiffs and add 158 plaintiffs) | X | |
| French | 33 | 7/13/2006 | X | |
| Wanna | 524 | 7/13/2006 | X | |
| Cournoyer | 826 | 7/17/2006 | X | |
| Enyard | 259 | 6/26/2006 (217 plaintiffs); 7/17/2006 (mot. to add 38 plaintiffs); 7/31/06 (mot. to add 4 plaintiffs) | X | |
| Burley | 32 | 6/27/2006 | | X |
| Julia DuMarce | 4,630[22] | 7/17/2006; 8/2/2006 (mot. to amend); 1/10/2007 (mot. to amend); 3/13/2007 (mot. to amend) | | X |
| Kimbell | 248 | 7/17/2006 | | X |
| Robinette | 221 | 7/17/2006 | | X |
| Abrahamson | 396 | 7/17/2006; 12/21/2006 (mot. to amend to correct caption) | | X |
| Zephier | 178 | 6/29/2006 | X | X |
| J. Cermak | 54 | 3/31/2006 | | X |

---

[22]Three unborn children listed in the proffered amended complaint in intervention of the Julia DuMarce group have been retained as intervening plaintiffs, at least on a contingent basis. By common law, a child *en ventre sa mere* is deemed to be *in esse* for purposes of inheritance or taking a remainder or other estate or interest for its own benefit. *See Cooper v. Heatherton*, 65 A.D. 561, 73 N.Y.S. 14 (N.Y. App. Div. 1901).

| R. Cermak, Sr. | 14 | 4/13/2006 | | X |
|---|---|---|---|---|
| Klingberg | 22 | 6/20/2006 | X | X |
| Alkire | 35 | 6/26/2006 | X | X |
| Arnold | 11 | 6/26/2006 | X | X |
| Henderson | 31 | 6/16/2006 | X | X |
| Stephens | 58 | 6/26/2006 | | X |
| Anonymous Blair | 1,091 | 7/17/2006; 1/3/2007 (mot. to add 658 anonymous plaintiffs) | X | X |
| Godoy | 762 | 7/20/2006 | X | X |
| Felix | 5 | 6/9/2006 | X | X |
| Youngbear | 39 | 9/8/2006 (mot. to intervene) | X | |
| Schroder | 2 | 10/16/2006 (mot. to intervene) | X | X |
| Marvel DuMarce | 40 | 11/27/2006 (mot. to intervene) | X | |
| Vadnais (Robertson) | 67 | 1/17/2007 (mot. to intervene) | | X |
| Kitto | 106 | 1/24/2007 (mot. to intervene) | X | |

To avoid prejudice, any future requests by individuals to participate in the *Wolfchild* case as claimants will be deemed to be untimely and to impair the manageability of this suit.  Further individuals who wish to pursue claims of breach of trust arising out of the 1888, 1889, and 1890 Appropriations Acts must file separate actions to vindicate their positions.  Neither the pendency of this case nor the passage of time would appear to preclude such new, additional suits; the Indian Trust Accounting Statute will have prevented the statute of limitations from commencing to run until the government provides an accounting.  *See* Pub. L. No. 108-108, 117 Stat. at 1263, addressed *supra*, at 5 n.5.

## C.  *Preparations for Further Proceedings*

Henceforth, the focus of the *Wolfchild* action and the consolidated *Cermak* case should shift from party-related issues to the merits, *i.e.*, (1) delineating the trust created by the 1888, 1889, and 1890 Appropriation Acts, (2) accounting for the trust corpus by the Department of the Interior and its agents after enactment of the 1980 Act, (3) addressing the current legal status of

the 1886 lands, (4) explicating and applying the criteria for determining whether a plaintiff or intervening plaintiff qualifies as a lineal descendant of a loyal Mdewakanton and thus a beneficiary of the trust, and (5) determining the monetary relief to which individual claimants might be entitled.  In aid of proceedings directed toward this end, counsel for the parties shall undertake three preparatory steps.  First, counsel for the various groups of individual intervening plaintiffs shall meet and confer to select a proposed coordinating counsel and a proposed alternate coordinating counsel for each of the two different categories of such intervening plaintiffs, *viz.*, those who claim descendancy from persons listed on the 1886 and 1889 censuses and those whose claim is based upon another source.  This conference shall take place on or before June 8, 2007, and the results of the conference shall be provided to the other parties and to the court by a joint status report submitted on or before June 15, 2007.  Thereafter, the coordinating counsel or alternate for each category of individual intervening plaintiffs shall serve as the focal point for consultation and planning for individual intervenors' participation in further proceedings in this case.

Second, the parties shall confer regarding a general plan and schedule for further proceedings in the case, including an identification of the substantive issues that should be addressed in the next several phases of the proceedings and those that should be deferred to later stages of the case.  This conference shall be held on or before July 12, 2007, and the resulting proposals shall be provided to the court via a joint status report filed on or before July 20, 2007.  A status conference shall be held on August 6, 2007, to address these proposals.[23]

Finally, counsel for plaintiffs and each counsel for a group of intervening plaintiffs shall provide to this court, on or before May 25, 2007, compact discs containing a spreadsheet file readable by either Quattro Pro X3 or OpenOffice 2.0, listing in separate rows each individual represented by counsel.[24]  Information pertinent to each individual shall be provided in separate columns, headed as follows:  (A) surname, plus suffix (*e.g.*, "Jr.," "Sr.," or "III"), if any, (B) first name, (C) middle name(s), (D) pseudonym for lawsuit (if any, otherwise leave blank), (E) group affiliation, (F) unique identifier within subgroup, if any, and (G) name of counsel of record.[25]

---

[23]This planning process obviates favorable action on a pending motion by plaintiffs to vacate the stay on briefing of a motion for partial summary judgment.  Similarly, the existing difficulties in managing this case with so many plaintiffs would be exacerbated by adoption of a pending motion filed by several groups of intervening plaintiffs to defer ruling on applications for post-deadline intervention, to await a decision on certain issues bearing on the merits.  Accordingly, both of these motions are being denied.

[24]One intervening plaintiff, Ms. Felix is, along with members of her immediate family, appearing *pro se*.  She shall also provide such a compact disc for her group.

[25]The actual names of anonymous plaintiffs and anonymous intervening plaintiffs shall not be provided in this listing, but rather only information in columns D, E, F, and G should be provided for these claimants.  Disclosure of the identify of the anonymous plaintiffs and intervening plaintiffs is governed by a protective order issued in this action.

**CONCLUSION**

For the reasons stated, the Objecting Communities' motion to quash [302] is GRANTED.

The motions to amend pleadings filed by plaintiffs (Fourth Amended Complaint [406]), the Rooney group (First Amended Complaint in Intervention [299]), the Julia DuMarce group (Third Amended Complaint in Intervention [304, 397, 435, 438, and 441]), the Anonymous Blair group (First Amended Complaint in Intervention [381]), the Mozak group (Third Amended Complaint in Intervention [426]), the Saul group (First Amended Complaint in Intervention [436]), the Taylor group (First Amended Complaint in Intervention [448]), and the Vassar group (First Amended Complaint in Intervention [451]) are GRANTED.[26]  The clerk shall file the proffered amended complaints.

The motions to intervene filed by the Youngbear group [293, 294], the Schroder group [309], the Marvel DuMarce group [327], the Vadnais group [400], and the Kitto group [413] are GRANTED, and the clerk shall file the proffered complaints in intervention.

The motion by the Ke Zephier group [288] to withdraw its complaint in intervention is GRANTED.

The government's motion to dismiss or strike [366] the complaint in intervention of the Ke Zephier group [262] is DENIED AS MOOT.  The government's motion to strike in part [380] the First Amended Complaint in Intervention of the Felix group [313] is GRANTED.[27]

---

[26]The motion by the Rocque group [298] to amend its complaint in intervention is DENIED AS MOOT.  The descendants of Prescott are already included in this group.  *See Wolfchild III*, 72 Fed. Cl. at 519 (Table).

[27]This motion to strike pertains to the intervening plaintiffs listed in the first amended complaint in intervention of the Felix group, and relates to each of the listed intervening plaintiffs except for Ms. Elaine Felix, Mr. Paul Russell Felix, Mr. Guy Joseph Felix, Tyler Brady Felix, and Logan Carter Felix.  The government cites this court's orders of August 30, 2006 and October 5, 2006, which observed that under RCFC 83.1(c)(8) a *pro se* plaintiff such as Ms. Felix may only represent herself and members of her *immediate* family.  Concededly, Ms. Felix's immediate family is comprised of herself and the four above-named individuals, and not the other persons listed in the Felix group's first amended complaint in intervention.

Based upon other submissions, it appears that the members of the broader Felix group who are subject to the motion to strike have now been encompassed by the Julia DuMarce group.  *See* Mot. to Amend First Amended Comp. of the Julia DuMarce group [304] at 3, ¶ 8 (inclusion of members of the Felix family); Mot. to Amend Second Amended Complaint in Intervention by the Julia DuMarce group [397] at 5, ¶ 8 (same).

The motion by the Abrahamson group [377] to correct the caption of its complaint in intervention [268] is GRANTED.

The motion by plaintiffs to vacate [405] the stay on briefing of plaintiffs' further motion for partial summary judgment [106] is DENIED.  The motion to defer ruling on post-deadline intervention filed by the Lafferty, Whipple, Lowe, and Blaeser groups of intervening plaintiffs [414] is DENIED.

It is so ORDERED.

s/ Charles F. Lettow
Judge
