# In the United States Court of Federal Claims

No.  03-2684L & No. 01-568L

(Filed: October 25, 2011)

| | |
|---|---|
| ********************************* ) | Indian monetary claims by lineal descendants |
| ) | of loyal Mdewakanton based upon the Sioux |
| **SHELDON PETERS WOLFCHILD,** ) | treaties of August 5, 1851 and June 19, 1858, |
| ***et al.,*** ) | the Acts of February 16, 1863 and March 3, |
| ) | 1863, and the Appropriation Acts for the |
| **Plaintiffs,** ) | Department of the Interior in 1888, 1889, and |
| ) | 1890; motion for reconsideration |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ********************************* | |

Erick G. Kaardal, Mohrman & Kaardal, P.A., Minneapolis, MN, for Wolfchild plaintiffs. With him on the briefs was William F. Mohrman, Mohrman & Kaardal, P.A., Minneapolis, MN.

Stephen Finn, Jody H. Schwarz, Daniel Steele, and J. Nathanael Watson, Trial Attorneys, Natural Resources Section, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant.  Of counsel were Kenneth Dalton and James Porter, Office of the Solicitor, Department of the Interior, Washington, D.C.

Jack E. Pierce, Pierce Law Firm, PA, Minneapolis, MN, for the Cermak plaintiffs and for the Stephens, R. Cermak, J. Cermak, Henderson, Klingberg, Alkire, Arnold, and Godoy groups of intervening plaintiffs.

Kelly H. Stricherz, Vermillion, SD, for the Mozak group of intervening plaintiffs.

Garrett J. Horn, Horn Law Office, Yankton, SD, for the Saul, Trudell, Taylor, Ferris, Henry, and Vassar groups of intervening plaintiffs.

Creighton A. Thurman, Yankton, SD, for the Cournoyer, Robinette, Kimbell, French, and Wanna groups of intervening plaintiffs.

Elizabeth T. Walker, Walker Associates, Alexandria, VA, for the anonymous Walker, the Enyard, and the Kitto groups of intervening plaintiffs.

Robin L. Zephier, Abourezk & Zephier, PC, Rapid City, SD, for the Zephier group of intervening plaintiffs.

Larry Leventhal, St. Paul, MN, for the Burley group of intervening plaintiffs.

Wood R. Foster, Jr., Siegel, Brill, Greupner, Duffy & Foster, PA, Minneapolis, MN, for the Lafferty, Blaeser, Whipple, and Lowe groups of intervening plaintiffs.

Bernard J. Rooney, Amherst, WI, for the Rooney group of intervening plaintiffs.

Scott A. Johnson and Todd M. Johnson, Johnson Law Group, Minnetonka, MN, for the Rocque group of intervening plaintiffs and the Descendants of Joseph Coursolle group of intervening plaintiffs.

James L. Blair, Renaud Cook Drury Mesaros, PA, Phoenix, AZ, for the anonymous Blair group of intervening plaintiffs.  With him on the briefs was Barry P. Hogan, Renaud Cook Drury Mesaros, PA, Phoenix, AZ.

Gary J. Montana, Montana & Associates, Osseo, WI, for the Julia DuMarce group of intervening plaintiffs.

Nicole N. Emerson, Lynn, Jackson, Shultz & Lebrun, PC, Sioux Falls, SD, for the Garreau group of intervening plaintiffs.

Douglas Kettering, Kettering Law Office, Yankton, SD, for the Ke Zephier group of intervening plaintiffs.

Randy V. Thompson, Nolan, MacGregor, Thompson & Leighton, St. Paul, MN, for the Abrahamson group of intervening plaintiffs.

Frances Felix, *pro se*, Minneapolis, MN, for herself and members of her immediate family as intervening plaintiffs.

Royce Deryl Edwards, Jr., Joplin, MO, for the Robertson-Vadnais group of intervening plaintiffs.

Rory King, Bantz, Gosch & Cremer, LLC, Aberdeen, SD, for the Marvel Jean DuMarce group and the Youngbear group of intervening plaintiffs.

Brian L. Radke, Radke Law Office, P.C., Sioux Falls, SD, for the Schroder group of intervening plaintiffs.

## OPINION AND ORDER

LETTOW, Judge.

This longstanding dispute between the United States ("the government") and approximately 20,750 persons of Indian descent (collectively "plaintiffs" or "plaintiffs and

plaintiff-intervenors") involves revenue derived from lands reserved for eligible Indians. On August 18, 2011, the court directed entry of a partial final judgment under Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC"), awarding plaintiffs and plaintiff-intervenors $673,944 for their statutory use-restriction claims. *See Wolfchild v. United States*, __ Fed. Cl. __, __, 2011 WL 3438414, at *36 (Aug. 18, 2011) ("*Wolfchild VIII*"). To effectuate the distribution of those funds pursuant to the Indian Tribal Judgment Funds Use or Distribution Act ("Distribution Act"), 25 U.S.C. §§ 1401-1408, the court remitted and remanded the task of determining eligible claimants to the Secretary of the Interior (the "Secretary"). *Id.* at *37. The court instructed the Secretary to produce a roll of claimants and plan for distribution, and to submit within one year a report of that proposed roll and plan for the court's review. *Id.* On September 2, 2011, the government filed a motion for reconsideration of the court's decision. At the court's request, plaintiffs and plaintiff-intervenors responded. The motion is ready for disposition.

## STANDARD FOR RECONSIDERATION

The government requests that the court undertake reconsideration using the standards applicable to interlocutory orders. *See* Def.'s Mot. for Reconsideration ("Def.'s Mot.") at 1-2; Pl.-Intervenors' Resp. in Opp'n to Def.'s Mot. at 5-6. In *Wolfchild VIII*, however, the court directed entry of "*final judgment* as to one or more, but fewer than all claims." *Wolfchild VIII*, __ Fed. Cl. at __, 2011 WL 3438414, at *36 (quoting RCFC 54(b)) (emphasis added). Hence, the case is no longer in an interlocutory posture as to those claims. Consequently, the motion for reconsideration does not fall under "RCFC 59(a), [but] rather . . . under the more rigorous standards of RCFC 59(e)," *Wolfchild v. United States*, 68 Fed. Cl. 779, 784 (2005) ("*Wolfchild II*"), as a "motion to alter or amend a *judgment*," RCFC 59(e) (emphasis added). *See White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 451 (1982) (post-judgment motions related to the merits should be considered under Rule 59(e) of the Rules of Federal Civil Procedure ("Fed. R. Civ. P."));[1] *Maxus Energy Corp. v. United States*, 31 F.3d 1135, 1139 (Fed. Cir. 1994) ("The universal rule is that, regardless of its label, any motion made within ten days[2] of entry of judgment which seeks a substantive change in the judgment will be considered a Fed.[]R.[]Civ.[]P. 59(e) motion." (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 (Fed. Cir. 1994))). Thus, the government's recitation of the standards for

---

[1]While Fed. R. Civ. P. 59 and RCFC 59 are not identical, their differences are not material for determining whether a particular motion should be deemed as falling under Rule 59(e) or not. *See* RCFC 59 rules committee's notes (2008 Amendment) ("The language of RCFC 59 has been amended to conform to the general restyling of the [Fed. R. Civ. P.]."); *Florida Power & Light Co. v. United States*, 66 Fed. Cl. 93, 96 (2005) ("In applying RCFC 59, judges of this [c]ourt regularly cite to cases applying [Fed. R. Civ. P.] 59.").

[2]Fed. R. Civ. P. 59 formerly required a motion under Rule 59(e) to be filed within ten days  The deadline was amended to 28 days in 2009. *See* Fed. R. Civ. P. 59 (advisory committee's notes on 2009 Amendments). Thereafter, the deadline in RCFC 59(e) was changed to 30 days and then 28 days, to correspond with the Fed. R. Civ. P. *See* RCFC 59 rules committee's notes (2010 Amendment); *id.* (2011 Amendment).

reconsideration is pro forma at best and insufficient by any measure because it inappropriately merges the standards for reconsideration of final judgments with those for review of interlocutory orders.  Meanwhile, plaintiff-intervenors' brief, which argues that this court should evaluate the government's motion as a reconsideration of an interlocutory order, is simply incorrect.[3]

RCFC 54(b) sets out the difference between partial final judgments and interlocutory orders:

> When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . . *Otherwise, any order or other decision*, however designated, that adjudicates fewer than all the claims . . . *does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities.

RCFC 54(b) (emphasis added); *see also Florida Power*, 66 Fed. Cl. at 95 (citing *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991)).  An amendment of an interlocutory order — which "may be revised at any time before the entry of a judgment" — requires a lesser showing than a reconsideration of a final judgment.  "At an interlocutory stage, the common law provides that the court has power to reconsider its prior decision on *any ground* consonant with application of the law of the case doctrine."  *Wolfchild II*, 68 Fed. Cl. at 785 (emphasis added).  However, once a final judgment has been entered, a motion to reconsider that judgment "seeks a revision which disturbs or revises legal rights and obligations that were settled by the previous judgment."  *Maxus Energy*, 31 F.3d at 1139 (citing *St. Paul Fire & Marine Ins. Co. v. Continental Cas. Co.*, 684 F.2d 691, 693 (10th Cir. 1982)).  Consequently, "[t]he legal standards for the amendments of final judgments . . . are not coextensive with the standards for the review of non-final orders, which may involve matters as mundane as evidentiary rulings [or] extensions of time."  *Florida Power*, 66 Fed. Cl. at 95-96; *cf. Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001) (departure from the law of the case requires a lesser showing than "the more rigorous requirements of *res judicata*").

For reconsideration of a final judgment under RCFC 59(e), the movant must make "a showing of extraordinary circumstances to justify relief."  *Crews v. United States*, 424 Fed. Appx. 937, 940 (Fed. Cir. 2011) (citing *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (table)); *cf. Infiniti Info. Solutions, LLC v. United States*, 93 Fed. Cl. 699, 705 (2010) (discussing "extraordinary circumstances" in the context of RCFC 60(b)(6)).  Thus, reconsideration of a final judgment is appropriate primarily on

---

[3]The court recognizes that the confusion in the standards has occurred in both directions. "On occasion . . . judges of this [c]ourt have applied the[] stricter standards [of RCFC 59] to non-final, interlocutory orders[, which] blurs the distinction between final and interlocutory orders." *Florida Power*, 66 Fed. Cl. at 96.  Contrastingly, *Global Computer Enters. v. United States*, 88 Fed. Cl. 466, 468 (2009), posits that both the Court of Federal Claims and the Federal Circuit have "utilized the standards set forth in Rule 59(a) to review Rule 59(e) motions."  *See also Strategic Hous. Fin. Corp. v. United States*, 87 Fed. Cl. 183, 185-86 (2009) (same).

grounds of "(1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (Fed. Cir. 2010) (applying Eleventh Circuit law regarding Fed. R. Civ. P. 59(e)); *see also Board of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs., Inc.*, 447 F.3d 1370, 1377 (Fed. Cir. 2006) (same).

## ANALYSIS

The government seeks reconsideration of three aspects of the court's decision. First, the government requests the court to reverse its determination that the Federal Reports Elimination and Sunset Act of 1995, Pub. L. No. 104-66, 109 Stat. 707 ("Reports Elimination Act"), terminated the Secretary's duty to submit distribution plans to Congress under the Distribution Act. *See Wolfchild VIII*, __ Fed. Cl. at __, 2011 WL 3438414, at *34-35. Second, the government requests the court to enter final judgment on all claims in this action. *See id.* at *36. Third, the government requests the court to reconsider its order remitting and remanding the distribution-plan-formulation task to the Secretary and providing for possible review of the Secretary's action. *See id.*

### A. *The Reports Elimination Act*

The Distribution Act states that "[w]ithin one year after appropriation of funds to pay a judgment of the . . . Court of Federal Claims to any Indian tribe, the Secretary of the Interior shall prepare and submit to Congress a plan for the use and distribution of the funds." 25 U.S.C. § 1402(a). However, the Secretary's duty to submit such a plan to Congress was repealed by the plain terms of the Reports Elimination Act. *See Wolfchild VIII*, __ Fed. Cl. at __, 2011 WL 3438414, at *35. Specifically, the Reports Elimination Act terminated "each provision of law requiring the submittal to Congress . . . of any annual, semiannual, or other regular periodic report specified on the list described under subsection (c)." Reports Elimination Act § 3003(a), 109 Stat. at 734. Subsection (c) refers to a list prepared by the Clerk of the House of Representatives. *Id.* § 3003(c), 109 Stat. at 735. Included in that voluminous list of reports to be eliminated is one titled "Manner of payment of a judgment to any Indian tribe[ authorized by] 25 U.S.C. 1402(a), 1404." H.R. Doc. No. 103-7, at 113 (1993). In short, the Reports Elimination Act explicitly terminated the reporting requirements of the Distribution Act by including those requirements on the list prepared by the Clerk of the House of Representatives of those reports to be specifically eliminated. The Reports Elimination Act thus "decimated" the Distribution Act because "the Secretary is no longer required or allowed to submit [a] proposed distribution plan to Congress." *Wolfchild VIII*, __ Fed. Cl. at __, 2011 WL 3438414, at *35.

The government nonetheless argues that the Reports Elimination Act does not apply to the Distribution Act, much less decimate it. As the government would have it, "[t]he language of the Reports Elimination Act did not terminate 'all' reports found in House Document No. 103-7 but only 'any' reports that were 'annual, semiannual, or regular periodic.'" Def.'s Mot. at 4. Contrary to the government's implied argument, however, Distribution Act reports are "regular periodic" reports. As stated plainly in the House list, the reports were to be submitted "180 days after appropriation of funds." H.R. Doc. No. 103-7, at 113. Such timely submission is not as "ad hoc" as the government suggests, Def.'s Mot. at 5, in contrast to many reports on the list that

might be so characterized, *see, e.g.*, H.R. Doc. No. 103-7, at 19 ("[a]t any time"), 62 ("[i]n advance"), 114 ("[n]o time specified"), 162 ("[a]s appropriate"). This understanding is confirmed by reports Congress exempted from the Reports Elimination Act, which otherwise would have been terminated as "annual, semiannual, or regular periodic." *See* Reports Elimination Act § 3003(d)(12), 109 Stat. at 735 (citing 22 U.S.C. § 5858) (exempting report required of the President "[n]ot less than 15 days before obligating any funds" for specified anti-nuclear-proliferation activities, 22 U.S.C. § 5858(a)).

In an alternative effort at partial resuscitation, the government suggests that the court "sever" the Distribution Act language repealed by the Reports Elimination Act and find that "Congress has partially repealed the Distribution Act only to the extent that the Secretary is no longer required to submit distribution plans to Congress under any particular deadlines." Def.'s Mot. at 13. The government's suggestion that somehow the Reports Elimination Act only repealed the Distribution Act's deadlines is without any textual support and meritless.[4] Further, severance is a concept to guide courts when holding part of a statute unconstitutional, as aptly demonstrated by every case cited by the government on the subject. *See* Def.'s Mot. at 8-9 (citing, *e.g.*, *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, __ U.S. __, __, 130 S. Ct. 3138, 3161-62 (2010) (holding tenure provisions contravened the Constitution's separation of powers but were severable from the rest of the Sarbanes-Oxley Act); *New York v. United States*, 505 U.S. 144, 186-87 (1992) (holding take-title provision was beyond Congress' enumerated powers and inconsistent with the Tenth Amendment but was severable from the rest of the Low-Level Radioactive Waste Policy Amendments Act of 1985); *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684-97 (1987) (holding legislative-veto provision was unconstitutional but was severable from the rest of the Airline Deregulation Act of 1978)). Here, though, the court is confronted with a legislative repeal, not a constitutional defect. The plain language of that legislative repeal instructs the Secretary no longer to submit distribution plans to Congress, and when "the intent of Congress is clear [from the unambiguous text of a statute], that is the end of the matter." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

B. *Final Judgment*

The government's second request is that the court enter final judgment on all claims in this case. The government avers that "there are no claims left for the [c]ourt to adjudicate," Def.'s Mot. at 15, save claims for costs and attorneys' fees that cannot be determined until after a final judgment has entered, *id.* at 15 n.2 (citing RCFC 54(d)). This asserted posture of the case is both incorrect and inconsistent with the government's previously expressed legal position. *See* Def.'s Mot. to Stay Pls.' Mots. for Interim Determination of the United States' Liability for Attorney's Fees, ECF No. 880; Order of August 5, 2011 (granting Def.'s Mot. to Stay). At a minimum, issues remain regarding the government's liability for attorneys' fees as well as

---

[4]The government's brief subsequently contends that this court's direction to the Secretary to report on its distribution plan one year from the entry of judgment in *Wolfchild VIII* is inconsistent with the Distribution Act's requirement that such a report be submitted "[w]ithin one year after appropriation of funds to pay a judgment." 25 U.S.C. § 1402(a); *see* Def.'s Mot. at 18-20. This is an unavailing proposition given the government's assertion that the Distribution Act's deadlines were eliminated.

recompense for plaintiffs' and plaintiff-intervenors' extensive evidentiary submissions that they are lineal descendants of the loyal Mdewakanton Sioux. *See Wolfchild VIII*, __ Fed. Cl. at __, 2011 WL 3438414, at *34.

### C. *Review of the Distribution Plan*

The government lastly requests the court to reconsider its order remitting and remanding the formulation of a distribution plan to the Secretary and directing the Secretary to submit that plan to the court for review. The government argues that, assuming the Reports Elimination Act did indeed eliminate the Secretary's submission of distribution plans to Congress, it does not follow that oversight of such plans shifts to this court. Instead, the government contends that any review of the Secretary's action would fall to the federal district courts under the Administrative Procedure Act. *See* Def.'s Mot. at 12-14. In contrast, plaintiff and plaintiff-intervenors argue that the court, per its determination in *Wolfchild VIII*, has power to remand the distribution-plan-formulation task to the Secretary and to address any challenges to the resulting report. *See* Pl.'s Resp. to Mot. for Reconsideration at 4-5; *see also* 28 U.S.C. § 1491(a)(2) ("In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."); 28 U.S.C. § 2521(c) ("The United States Court of Federal Claims shall have such assistance in the carrying out of its lawful writ, process, order, rule, decree, or command as is available to a court of the United States."); RCFC 52.2(f) (governing remand orders).

As the court explained in its earlier opinion, this court has inherent juridical power to effectuate its own judgments. *See Wolfchild VIII*, __ Fed. Cl. at __, 2011 WL 3438414, at *35 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187 (1867)). Indeed, it is fundamental that this "court may take action to protect, secure, and enforce a judgment . . . so long as the court had juridical power to issue that judgment." *Infiniti*, 93 Fed. Cl. at 703 (2010) (citing *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."); *Riggs*, 73 U.S. at 187 ("[T]he rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree." (alteration added)); *Heartland-By-Prods., Inc. v. United States*, 424 F.3d 1244, 1252 (Fed. Cir. 2005) ("Federal courts hold the inherent power to enforce their prior judgments.")).

It is also fundamental that Congress may alter the means by which courts exercise their power of enforcing judgments. *See Virginia v. West Virginia*, 246 U.S. 565, 600-06 (1918) (Congress may create "additional process relevant to the enforcement of judicial authority" and "new remedies . . . to meet the exigency occasioned by the judicial duty of enforcing a judgment against a [s]tate," *id.* at 603); *Riggs*, 73 U.S. at 187-88 ("Congress . . . possesses the uncontrolled power to legislate in respect both to the form and effect of executions and other final process to be issued in the [f]ederal courts."); *cf. id.* at 195 ("The Constitution itself becomes a mockery . . . if the [s]tate legislatures may at will annul the judgments of the [f]ederal courts, and the nation is deprived of the means of enforcing its own laws by the instrumentality of its own tribunals. Congress may adopt [s]tate laws for such a purpose directly, or confide the authority to adopt

them to the [f]ederal courts, *but their whole efficacy when adopted depends upon the enactments of Congress*." (emphasis added) (footnote omitted)).

When Congress initially enacted the Distribution Act, it specifically displaced this court as the final arbiter of distributions to effectuate judgments in favor of Indians.  Congress subsequently removed itself from this role, however, with the repeal of those effectuation-related provisions by the Reports Elimination Act.  That removal did not leave a juridical vacuum, contrary to the government's position.  Instead, this court simply resumed its general powers of effectuation of its judgments.

This resumption of powers explains why there is no foundation for the government's suggestion that review of the Secretary's action to establish a distribution plan inheres in a district court under the Administrative Procedure Act.  The sort of displacement the government suggests would require specific statutory provisions.  First, congressional acts delegating or limiting the inherent powers of federal courts are strictly construed and require express intent. *See Miller v. French*, 530 U.S. 327, 340 (2000) ("[W]e should not construe a statute to displace courts' traditional equitable authority absent the clearest command or an inescapable inference to the contrary." (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)) (internal citations and quotation marks omitted)); *NASCO*, 501 U.S. at 46-48 (federal statutes and the Federal Rules of Civil Procedure have not displaced the federal courts' inherent power to sanction bad-faith conduct by litigants, for "'we do not lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power," *id.* at 47 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)); *Wingo v. Wedding*, 418 U.S. 461, 470 n.11 (1974) (delegation of federal district court powers to conduct hearings to magistrate judges must be "express and circumscribed with procedural safeguards" and "reference to a master shall be the exception and not the rule"); *Crowell v. Benson*, 285 U.S. 22, 46 (1932) ("[T]he statute contains no express limitation attempting to preclude the court, in proceedings to set aside an order [of the U.S. Employees' Compensation Commission] as not in accordance with law, from making its own examination and determination of facts whenever that is deemed to be necessary to enforce a constitutional right properly asserted.  As the statute is to be construed so as to support rather than to defeat it, *no such limitation is to be implied*." (emphasis added) (citations omitted)); *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008) (Congress would not abrogate a trial court's inherent power to grant a stay "*sub silentio*.").

Second, in comparable fashion, this court's general grant of jurisdiction under the Tucker Act and here, under the Indian Tucker Act, can only be displaced by more specific legislation. *See, e.g.*, *United States v. Fausto*, 484 U.S. 439, 454-55 (1988) (holding that the Tucker Act was displaced by the "comprehensive and integrated review scheme" of the Civil Service Reform Act, *id.* at 454); *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 549-50 (Fed. Cir. 1994) (concluding that the Tucker Act was displaced by the comprehensive administrative and district-court review procedures provided by the Medicare Act); *Puget Sound Power & Light Co. v.*

*United States*, 23 Cl. Ct. 46, 56 (1991) (deciding that the Tucker Act was displaced by the Northwest Power Act), *appeal dismissed*, 944 F.2d 912 (Fed. Cir. 1991) (Table).[5]

Third, and most generally, common law prevails where statute does not command, and derogations of common law by statute are strictly construed. "The Supreme Court has established that 'courts may take it as a given that Congress has legislated with an expectation that the common law principle will apply except when the statutory purpose to the contrary is evident.'" *Avgoustis v. Shinseki*, 639 F.3d 1340, 1342 (Fed. Cir. 2011) (quoting *Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991)); *see also Rios v. Nicholson*, 490 F.3d 928, 931 (Fed. Cir. 2007) ("Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles." (alteration in original) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)). *See generally* 3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 61:2 (7th ed. 2008).

In sum, the Distribution Act modified this court's powers to oversee its judgments, but the Reports Elimination Act elided that aspect of the Distribution Act. As a consequence, this court regained its general powers to effectuate its judgments, including by issuing "a remit, remand, and direction to the Secretary of the Interior to provide a report to the court within the time specified in 25 U.S.C. § 1402." *Wolfchild VIII*, __ Fed. Cl. at __, 2011 WL 3438414, at *35.

## CONCLUSION

For the reasons stated, the government's motion for reconsideration is DENIED.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[5]This principle reflects the general rule that "a remedy furnished by a precisely drawn and detailed statute preempts a more general remedy." *Puget Sound*, 23 Cl. Ct. at 56-57 (1991) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 834 (1976); *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566-67 (1942)).